IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-263-FL

BELINDA L. TAYLOR,                          )
                                            )
            Plaintiff/Claimant,             )
                                            )
                                            )        **MEMORANDUM AND**
    v.                                      )        **RECOMMENDATION**
                                            )
MICHAEL J. ASTRUE, Commissioner of          )
Social Security,                            )
                                            )
            Defendant.                      )

This matter is before the court on the parties' cross motions for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c). Claimant Belinda L. Taylor ("Claimant") filed this action pursuant

to 42 U.S.C. § 405(g), seeking judicial review of the denial of her applications for a period of

disability and Disability Insurance Benefits ("DIB") payments. The time for filing responsive briefs

has expired and the pending motions are ripe for adjudication. Having carefully reviewed the

administrative record and the motions and memoranda submitted by the parties, this court

recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's

Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on 6 July 2007, alleging

disability beginning 27 March 2007. (R. 13, 40, 115). Her claim was denied initially and upon

reconsideration. (R. 55-56, 62-65, 71-73). A hearing before the Administrative Law Judge ("ALJ")

was held on 14 August 2009, at which Claimant was represented by counsel and a vocational expert

("VE") appeared and testified. (R. 45-52). On 28 August 2009, the ALJ issued a decision denying

Claimant's request for benefits. (R. 8-19). On 9 June 2010, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq*., is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

2

in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper credibility assessment; (2) failure to develop the record by not seeking a medical source opinion concerning Claimant's functional limitations; (3) failure to pose a hypothetical that adequately reflected Claimant's mental impairment; and (4) failure to resolve conflicts between the VE's testimony and

3

the Dictionary of Occupational Titles ("DOT").[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 5, 10-11,

13-14. ("Pl.'s Mem."). Claimant requests that the court set this matter for oral argument. Pl.'s Mem.

at 16.

## FACTUAL HISTORY

### I.   ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in

substantial gainful employment. (R. 13). Next, the ALJ determined Claimant had the following

severe impairments: carpal tunnel syndrome, fibromyalgia and depressive disorder, not otherwise

specified ("NOS"). *Id.* However, at step three, the ALJ concluded these impairments were not

severe enough, either individually or in combination, to meet or medically equal one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged

mental impairment and applying the technique prescribed by the regulations, the ALJ found

Claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social

functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes

of decompensation. (R. 14).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

ability to perform light work[2] involving only simple, routine and repetitive tasks and with

---

[1] While Claimant identifies five assignments of error, the court considers two of the issues in its credibility discussion below. Furthermore, the court identifies and discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the

4

"occasional contact with coworkers, no dealing with the public and no work at a production rate."
(R. 14). In making this assessment, the ALJ found Claimant's statements about her limitations not
fully credible. (R. 17). At step four, the ALJ concluded Claimant did not have the RFC to perform
the requirements of her past relevant work as a medical secretary and purchasing clerk. (R. 18).
Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC,
the ALJ determined Claimant is capable of adjusting to the demands of other employment
opportunities that exist in significant numbers in the national economy. *Id.*

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old and unemployed.
(R. 27). Claimant obtained a two-year college degree in medical assistant training. (R. 28).
Claimant was last employed as a purchasing agent for approximately seven years. (R. 40, 38).

Claimant testified that she is unable to work due to symptoms associated with carpal tunnel
syndrome, fibromyalgia, depression and anxiety. (R. 33, 35, 41, 43). Claimant underwent carpal
tunnel release on her left hand; however, Claimant testified that two of her fingers remain numb "all
the time" and she has very little strength in her left hand. (R. 43). Claimant also experiences
numbness, swelling and pain in her right hand. (R. 43). Claimant testified that when she worked,
she often missed days because of fibromyalgia and depression. (R. 41). Claimant explained she
continues to undergo treatment for fibromyalgia which basically entails maintaining her medications
as "there's really no treatment for fibromyalgia." (R. 44). While Claimant testified to enduring

---

time with some pushing and pulling of arm or leg controls. To be considered capable of performing
a full or wide range of light work, you must have the ability to do substantially all of these activities.
If an individual can perform light work, he or she can also perform sedentary work, unless there are
additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of
time. 20 C.F.R. § 404.1567(b).

5

depression symptoms "for years," (R. 33), Claimant did not begin seeking formal treatment for her depression and anxiety until September 2008. (R. 31-32). Claimant has difficulty sleeping, waking up three to four times each night. (R. 34). Accordingly, Claimant testified that she wakes up exhausted and generally takes at least one nap a day lasting one to two hours. (R. 34). Claimant takes Gedon and Cymbalta for depression, Klonopin for anxiety and Trazodone for sleep. (R. 32-33). Claimant attributed recent weight gain to her medications. (R. 29-30). Claimant stated as a result of the lack of both energy and interest, she spends the majority of her time in bed watching television. (R. 45). Claimant does not socialize as her anxiety worsens when she is out in public. (R. 35, 37).

### III.    Vocational Expert's Testimony at the Administrative Hearing

Robert Lester testified as a VE at the administrative hearing. (R. 45). After the VE's testimony regarding Claimant's past work experience (R. 47), the ALJ posed the following hypothetical assuming an individual the same age as Claimant and possessing the same educational background:

> [A]ssume the exertional capacity for light work, which would involve standing and walking up to six hours; sitting up to six hours in an eight-hour day; lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently, with non-exertional limitations including no more than frequent fingering and handling; limited to simple, routine and repetitive tasks; limited to occasional contact with coworkers; no dealing with the public; and unable to work at a production rate. With those criteria in mind, could such an individual do any of the claimant's past relevant work.

(R. 47-48). The VE responded in the negative but explained that such an individual could perform the following unskilled, light work: (1) clerical assistant/general office helper (DOT #239.567-010), (2) non-postal mail clerk (DOT #209.687-026) and (3) router/home paperwork dispatch work (DOT

6

#222.687-038). (R. 48). The VE explained no positions would be available for an individual who needed to lie down and nap one or more hours during an eight-hour workday. *Id.*

## DISCUSSION

### I. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ's rationale for rejecting Claimant's pain testimony was not based on substantial evidence. Pl.'s Mem. at 11-17. In particular, Claimant contends the ALJ improperly relied on the absence of objective evidence of pain and failed to "discuss[] [Claimant's] credibility regarding the severity of her fibromyalgia." *Id.* at 11, 13.

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may

7

not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ properly summarized Claimant's medical records as to each impairment during the relevant time period. With respect to carpal tunnel syndrome, the ALJ noted Claimant underwent left carpal tunnel release in March 2007. (R. 15, 237). While Claimant's symptomatology initially "markedly improved" allowing her to return to work in mid-April, the ALJ acknowledged that after a follow-up examination on 24 April 2007, Clinton Massey, M.D., Claimant's treating physician, chose to keep Claimant out of work due to "significant subjective complaints" of pain, tingling and numbness in her left hand. (R. 15, 17, 233-34). Dr. Massey noted, however, that Claimant "neurologically seems to be doing okay . . . ." and that "[p]rognosis is good for ultimate recovery although I think this is going to be a long hard struggle." (R. 15, 233). On referral by Joel Krakauer, M.D., from whom Claimant sought a second opinion regarding her left hand (R. 274), Dwayne Patterson, M.D., performed an electromyogram ("EMG") study on 22 October 2007. (R. 15, 269-70). The ALJ noted that Dr. Patterson found evidence of very mild left median neuropathy at the wrist but no evidence of an ulnar neuropathy, radiculopathy or plexopathy. (R. 15, 269). Furthermore, the ALJ observed

8

that a physical examination performed by Dr. Patterson revealed negative carpal tunnel compression, negative Tinel's at the wrist and elbow and normal strength and sensation. (R. 16, 269).

The ALJ also noted Claimant's history of fibromyalgia. In particular, the ALJ noted Dr. Massey's observation of Claimant's past treatment for fibromyalgia during a 5 March 2007 visit. (R. 15, 235). In his progress report, Dr. Massey opined that fibromyalgia may complicate Claimant's symptomatology but provided no further information. (R. 237). The ALJ noted also that Claimant received treatment from Sandra Krantz, FNP with the Goshen Medical Center. (R. 16). On 11 November 2008, Claimant visited Ms. Krantz for follow-up fibromyalgia treatment, apparently in response to a recent fall. (R. 300). Ms. Krantz indicated that with respect to fibromyalgia, Claimant was doing well on her current medications. (R. 301). On 17 December 2008, Ms. Krantz indicated that Claimant reported "persistent neck and back pain with her fibromyalgia" but noted again that Claimant was "doing well on her current medications." (R. 300). In a progress report dated 18 February 2009, Ms. Krantz assessed Plaintiff with a "[h]istory of fibromyalgia" and made no medication changes. (R. 299). As the ALJ noted, during her February visit, Claimant reported "all in all she has been doing pretty well." (R. 16, 299). The ALJ acknowledged also the "provisional diagnosis" of fibromyalgia by J. Robert Franks, PA-C, on 6 October 2008 and documentation of Claimant's complaint of fibromyalgia during a follow-up on 12 August 2009. (R. 16, 309, 319).

With respect to Claimant's treatment for her mental impairment, the ALJ acknowledged that in October 2008, Mr. Franks, from whom Claimant received mental health treatment during 2008 and 2009, assessed Claimant with major depressive disorder and a Global Assessment of

Functioning ("GAF")[3] score of 55 (R. 16, 319), which indicates "[m]oderate symptoms . . . [or] moderate difficulty in social, occupational, or school functioning . . . ." DSM-IV at 32 (bold typeface omitted). The ALJ noted Claimant's report to Ms. Krantz on 18 February 2009 that Claimant "has been doing well on her current medication for her major depressive disorder." (R. 16, 299). The ALJ acknowledged the Medical Source Statement ("MSS") completed by Mr. Franks on 12 August 2009, summarizing the numerous observations by Mr. Franks. (R. 16, 304-08[4]). For example, the ALJ noted Mr. Franks found that Claimant had no to mild loss in her ability to, *inter alia*, understand and remember very short, simple instructions, carry out detailed instructions and sustain an ordinary routine without special supervision. (R. 16, 306-07). The ALJ acknowledged further that Mr. Franks found Claimant had a moderate loss in her ability to, *inter alia*, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes and respond appropriately to changes in a routine work setting. *Id.* The ALJ noted also that Mr. Franks found Claimant had a marked loss in her ability to, *inter alia*, maintain regular attendance and perform at a consistent pace without an unreasonable number and length of rest periods and that Claimant would be absent from work more than three times a month due to her impairments or treatment. *Id.* Finally, the ALJ noted Mr. Franks' observation that Claimant's general appearance, flow of thought, insight, judgment, mood and affect were normal (R. 16, 309).

Finally, the ALJ discussed the 2007 findings of Ashly Weeks, M.A., a Disability

---

[3] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

[4] Pages 321 through 325 of the administrative transcript contain a duplicate copy of the MSS.

10

Determination Service ("DDS") examining consultant, and Cal VanderPlate, Ph.D., a DDS non-examining consultant. The ALJ observed that Ms. Weeks' diagnostic impression included depressive disorder, NOS and a GAF of 65 (R. 15, 249), which indicates "[s]ome mild symptoms . . . [or] some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32 (bold typeface omitted). Ms. Weeks noted also that Claimant was capable of understanding, retaining and following simple instructions, sustaining attention to perform simple, repetitive tasks, and relating to fellow workers and supervisors but may have some difficulty tolerating the stress associated with day to day work activity. (R. 15, 249). Dr. VanderPlate found Claimant capable of understanding detailed and complex instructions, carrying out detailed and complex tasks, completing a normal work week, accepting supervision and working in proximity with coworkers, managing stress and adjusting to a task setting and dealing with change. (R. 15, 267).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 SSR LEXIS 4, at \*18, 1996 WL 374186, at \*6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's testimony that she stays at home resting in bed and watching TV and is not involved in many social activities; (2) Claimant's feelings of hopelessness, lack of energy, sadness, fatigue and body aches; (3) Claimant's increased anxiety when out in public; (4) the effectiveness of Claimant's current medications; (5) referral to physical therapy and (6) Claimant's

11

tendency to become easily upset. (R.15-17).

Despite the above, Claimant contends the ALJ erroneously evaluated her assertions regarding the intensity, persistence, and limiting effects of her pain and other symptoms by relying on the lack of objective evidence of pain. Although Claimant is not required to demonstrate the effects of her symptoms with objective findings, objective evidence is nevertheless a crucial evaluation tool. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006). Here, the ALJ properly evaluated Claimant's subjective accounts of her pain with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Rather than requiring objective evidence or considering only objective evidence, the ALJ simply relied on the record evidence, which notably included minimal documentation regarding Claimant's impairments and in particular, fibromyalgia and the effects thereof, to find that Claimant's testimony regarding her limitations was not fully credible. For example, with respect to Claimant's mental impairments, the ALJ acknowledged Mr. Franks' opinion that Claimant would be absent from work more than three times a month due to such impairments. (R. 16, 18, 306). However, as the ALJ explained, Mr. Franks' opinion as to Claimant's work absences resulting from her mental impairments was contradicted by Mr. Franks' findings as to Claimant's mental abilities, her general appearance and her flow of thought, insight, judgment and mood, as well as findings by DDS consultants. (R. 15, 18). With respect to carpal tunnel syndrome, the ALJ acknowledged, despite Claimant's argument to the contrary, that while it was noted in an 10 April 2007 progress report that Claimant's symptomatology had improved, a progress report issued a couple of weeks later indicated that Claimant complained of increasing pain and numbness in her left hand and arm. (R. 15, 17, 233-34); Pl.'s Mem. at 12. However, as the ALJ observed, a physical examination in October 2007 revealed Claimant had

12

normal strength and sensation in her left upper extremity. (R. 16, 269)

Regarding Claimant's argument that the ALJ failed to accord proper consideration to Claimant's testimony about fibromyalgia, the court observes at the outset that the ALJ specifically acknowledged Claimant's complaints associated with fibromyalgia, including body aches, inability to rest and fatigue. (R. 18). While the record contains a few notations of Claimant having a history of fibromyalgia, a fact not in dispute, the record is void of explanations as to how fibromyalgia prevents Claimant from working. Notably, Claimant's own version of the relevant facts includes minimal discussion of her treatment for fibromyalgia. *See* Pl.'s Mem. at 1-4. Testimony elicited by Claimant's counsel as to the functional limitations experienced as a result of fibromyalgia is limited to Claimant's explanation that fibromyalgia causes body aches, prevents her from "hold[ing] her arms up for too long," and disturbs her sleep. *See* (R. 41-44).

Fibromyalgia is not detectable through diagnostic tests, but rather through medically accepted clinical techniques that show the existence of an impairment. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (describing fibromyalgia as an elusive and mysterious disease). As the Seventh Circuit noted in *Sarchet*, "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective." *Id.* Nevertheless, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition").

Here, Claimant has failed to carry her burden in showing an inability to perform substantial gainful activity as a result of fibromyalgia. *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about [the claimant's] medical

13

impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis."); *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making [her] strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)). The record contains no opinion by a treating or examining physician as to Claimant's functional limitations as a result of Claimant's fibromyalgia. *See Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 308 (4th Cir. 2004) (claimant found disabled where claimant's rheumatologist reported that claimant's fibromyalgia and its resulting symptoms prevented claimant from "'being able to perform normal daily activities' or 'remember simple directions.'").

The ALJ properly evaluated Claimant's subjective accounts of her pain with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant is only capable of performing light exertional activities, despite a state agency opinion to the contrary, reflects the weight and credibility he afforded Claimant's subjective statements about her pain. (R. 240). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

**II.     The ALJ properly developed the record.**

14

Claimant contends the ALJ failed to develop the record. In particular, Claimant contends the mandate that the ALJ develop a claimant's complete medical history includes obtaining a treating source's "opinion on the claimant's [RFC]." Pl.'s Mem. at 14. As such, Claimant implies that the ALJ 's RFC determination is not supported by substantial evidence.

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty includes developing the claimant's "complete medical history." 20 C.F.R. § 404.1512(d). The regulations define "complete medical history" as "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which [a claimant] files [her] application." 20 C.F.R. § 404.1512(d)(2); *see also* 42 U.S.C. § 423(d)(5)(B) ("[T]he Commissioner . . . shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months . . . .").

Nevertheless, the burden of proving an alleged disability remains with the claimant throughout the first four steps of the sequential evaluation process. *Pass*, 65 F.3d at 1203. The claimant is responsible for furnishing or identifying medical and other evidence regarding her impairments. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may require."); 20 C.F.R. § 416.912(c) (explaining it is the claimant's burden to furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations). As stated in *Bowen v. Yuckert*, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his [or her] own

15

medical condition, to do so." 482 U.S. 137, 146 n.5 (1987).

At the outset, the court observes that Claimant overstates the ALJ's duty to develop the record. Claimant has not cited any authority requiring that an ALJ obtain a functional capacity evaluation from an individual's treating physician before deciding a Claimant's RFC.[5] The ALJ is required to develop the record to the extent necessary to reach a decision in regard to Claimant's RFC which is supported by substantial evidence. However, the ALJ is required to look beyond the evidence submitted only when that evidence is insufficient or "inadequate" upon which to make an informed decision. 20 C.F.R. § 404.1512(e)(1).

Claimant's contention that the ALJ erred in failing to develop the record relates to statements concerning Claimant's carpel tunnel syndrome made by Dr. Massey in his April 2007 progress reports. In his written report dated 10 April 2007, Dr. Massey advised that Claimant should avoid

_____

[5] Within this assignment of error, Claimant contends that an ALJ's "duty [to develop the record] includes obtaining the *treating* physician's opinion regarding the claimant's functionality *before* seeking a consulting physician's opinion." Pl.'s Mem. at 26 (emphasis added). Plaintiff correctly notes that pursuant to the regulations, "[i]f [a claimant's] medical sources cannot or will not give [the SSA] sufficient medical evidence about his or her impairment for [the SSA] to determine whether [a claimant is] disabled . . . ," the SSA may ask the claimant to attend a consultative examination ("CE"). 20 C.F.R. § 404.1517; *see also* 20 C.F.R. § 404.1512(e), (f) (explaining when the evidence from a treating source is inadequate for the SSA to determine whether a claimant is disabled, the SSA must first seek additional evidence or clarification from the treating source and if unsuccessful in obtaining such information or clarification, the SSA may order a CE at its expense); Program Operations Manual System ("POMS"), § DI 22510.010(B)(1)(a) & (2)(a), http://policy.ssa.gov/poms.nsf/lnx/0422510010 (last visited Mar. 23, 2011) (explaining an individual's treating source is often in the best position to provide a CE but acknowledging situations exist where it may be necessary to seek a CE from a medical source other than the treating source). Here, the record does not contain a state agency physical examination. Rather, it only contains a state agency psychological evaluation performed by Ms. Weeks. (R. 247-49). Claimant does not contend an error was made based on this mental evaluation and the court observes further that the ALJ, in determining Claimant's mental limitations, placed "significant weight" on the opinion provided by Mr. Franks, a treating source. (R. 18). Claimant's limited discussion of this issue is apparently provided only in support of his contention that the ALJ is required to seek a treating source's opinion regarding an individual's RFC.

16

lifting over 20 pounds. (R. 15, 17, 234). However, on 24 April 2007, Dr. Massey noted that while Claimant "seem[ed] to be doing okay" neurologically, she had "significant subjective complaints" and thus kept Claimant out of work. (R. 15, 17, 233). Claimant, apparently of the belief that the ALJ based his RFC decision solely on Dr. Massey's earlier of the two progress reports, contends that the ALJ had a duty to obtain Dr. Massey's opinion about Claimant's functional limitations. Pl.'s Mem. 15.

Here, the court finds that the ALJ's decision not to gather additional evidence on Claimant's carpal tunnel syndrome was reasonable. Before him, the ALJ had medical records from 2007 through 2009 from Claimant's examinations conducted by Dr. Massey, Dr. Patterson, and treating sources with Goshen Medical Center, all of which were discussed in the ALJ's decision. Regarding Dr. Massey's opinions, while Claimant suggests that the ALJ overlooked Dr. Massey's decision to keep Claimant out of work, the court observes the ALJ specifically noted this decision as well Claimant's significant subjective complaints. (R. 15, 17). Further, as discussed earlier, subsequent to Claimant's treatment from Dr. Massey, Claimant sought a second opinion from Dr. Krakauer about her carpal tunnel syndrome, who referred Claimant to Dr. Patterson for an electrodiagnostic consultation. (R. 15, 269). While ignored by Claimant in both her discussion of the facts and this assignment of error, the ALJ noted that Dr. Patterson found evidence of very mild left median neuropathy at the wrist but no evidence of an ulnar neuropathy, radiculopathy or plexopathy. (R. 15, 269). Furthermore, a physical examination performed by Dr. Patterson revealed *inter alia* normal strength and sensation in Claimant's left upper extremity. (R. 16, 269). Finally, the ALJ noted that during a February 2009 follow-up at the Goshen Medical Center, Claimant reported "all in all she has been doing pretty well." (R. 16, 299).

17

The ALJ had before him the medical records provided by Claimant from her treating physicians, which are adequately addressed in the ALJ's decision. "While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'go to inordinate lengths to develop a claimant's case.'" *Craft v. Apfel*, 164 F.3d 624 (Table), 1998 U.S. App. LEXIS 24674, at *10, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998) (quoting *Thomas v. Califano*, 556 F.2d 616,618 (1st Cir. 1977)). There was substantial evidence before the ALJ to support his determination of Claimant's RFC. Therefore, the ALJ satisfied his duty to develop the record.

Nevertheless, assuming *arguendo* that the medical record is incomplete, Claimant has failed to allege or demonstrate that inclusion of further documentation would change the outcome of the case. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). The record does not contain any additional treatment records from Dr. Massey and Claimant does not contend such records exist. Indeed, the court notes that while Claimant was allowed to submit material evidence when she sought review by the Appeals Council, no such evidence was submitted.[6] *See* 20 C.F.R. 404.970(b) (noting the Appeals Council will consider additional evidence if it relates to the period on or before the date of the ALJ's decision); *Aytch*, 686 F. Supp. at 599. Furthermore, Claimant is represented by the same counsel who represented her at the administrative hearing. After receiving the record into evidence at the beginning of the hearing, the ALJ inquired of Claimant's present counsel as to whether any additional evidence existed to which counsel responded

---

[6] The Appeals Council noted that Claimant submitted additional evidence. (R. 1, 4, 321-25). However, the additional evidence is not new and material as it is a duplicate of the 12 August 2009 medical source statement by Mr. Franks which the ALJ acknowledged and discussed at length in his decision. (R. 16, 18, 304-08).

18

in the negative. (R. 26); *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."). Accordingly, Claimant has not shown that the medical record before the ALJ was incomplete and that, therefore, she was prejudiced because the ALJ did not seek out additional evidence from Dr. Massey regarding functional capacity. *See Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (explaining "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded") (citations omitted).

### III. The hypothetical posed to the VE adequately characterized Claimant's mental impairment.

Claimant contends the hypothetical posed to the VE did not adequately reflect Claimant's mental impairment. Pl.'s Mem. 10. In particular, Claimant contends the hypothetical should have noted that Claimant experienced "moderate limitations of concentration" and that Claimant's ability to "perform . . . without an unreasonable number and length of rest periods" and "to complete a normal work week without interruption from psychologically based symptoms" are "moderately limited." *Id.*

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health &*

19

*Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441, 445 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

The mental activities that Claimant identifies as having been ignored by the ALJ are contained in Section III ("B" criteria) of the Psychiatric Review Technique ("PRT") form and in Section I-Summary Conclusions of the mental RFC ("MRFC") form – both of which were completed by Dr. VanderPlate, a state agency non-examining consultant. (R. 261, 265-66). In the PRT form, Dr. VanderPlate indicated that Claimant has a depressive disorder, NOS (R. 254), and, as a part of the "B" criteria, noted Claimant had "moderate" difficulties in maintaining concentration, persistence and pace. (R. 261). In Section 1 of the MRFC, Dr. VanderPlate indicated that Claimant is "moderately limited" in her ability to maintain attention and concentration for extended periods and to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 265-66).

Despite Claimant's contention to the contrary, the "B" criteria is used by the ALJ to determine whether Claimant has a severe impairment, and if so, whether that impairment meets one of those listed in Appendix 1 of the regulations – not whether she retains the functional capacity to perform her past relevant work, or any other work. *Norris v. Astrue*, 7:07-CV-184-FL, 2008 U.S. Dist.

20

LEXIS 92635, 2008 WL 4911794, at *16 (E.D.N.C. Nov. 14, 2008); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, *13, 1996 WL 374184, at *4 (providing that the "B" criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *accord* POMS § DI 24510.006(C)(4), http://policy.ssa.gov/poms.nsf/lnx/0424510006 (last visited Mar. 23, 2011). Similarly, the ALJ did not err in excluding from the hypothetical question the mental activities listed in Section 1 of the MRFC form.[7] *Norris*, 2008 U.S. Dist. LEXIS 92635, 2008 WL 4911794, at *16 (citing *Malueg v. Astrue*, No. 06-C-676-S, 2007 U.S. Dist. LEXIS 39790, at *18, 2007 WL 5480523, at *6 (W.D. Wis. May 30, 2007) (holding the ALJ did not err by not using the Section I worksheet portion of the mental RFC form in determining a claimant's RFC) and *Bates v. Astrue*, 07-074-JJF, 2008 U.S. Dist. LEXIS 30817, at *32, 2008 WL 1736819, at *11 (D. Del. Apr. 11, 2008) (explaining there is no requirement that the ALJ include every limitation identified within the summary conclusions)). As POMS instructs,

> Section I [of the MRFC form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment .... Section III - Functional Capacity Assessment, is for recording the mental RFC determination. It is in *this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.*

---

[7] Claimant maintains also that a "'[m]oderate' limitation in ability to concentrate means that [she] is 'often' unable to concentrate." Pl.'s Mem. at 10. However, as the POMS states, the term "moderate" is a "nonspecific qualifying term" that "do[es] not describe function and do[es] not usefully convey the extent of capacity limitation." POMS § DI 24510.065(B)(1)(d), http://policy.ssa.gov/poms.nsf/lnx/0424510065 (last visited Mar. 23, 2011); *see also id.* § DI 24510.063(B)(2) (explaining "moderately limited" indicates "the individual's capacity to perform [an] activity is impaired"). Furthermore, regardless of the definition Claimant wishes to assign to the term "moderate," as explained above, the severity ratings found in the "B" criteria of the PRT form and Section 1 of the MRFC form do not equate to a mental RFC assessment.

POMS § DI 24510.060(B)(2)(a) & (4)(a), http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited Mar. 23, 2011) (boldface omitted) (emphasis added).

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical and mental impairments. (R. 48); *see Walker*, 889 F.2d at 50. The ALJ characterized Claimant's mental impairment as limiting her to performing simple, routine and repetitive tasks at a non-production rate with only occasional contact with coworkers and no involvement with the public, a finding supported by substantial evidence. (R. 48). Accordingly, the ALJ's hypothetical adequately reflected Claimant's difficulties with concentration, persistence and pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (explaining "the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [a claimant's] deficiencies in concentration, persistence or pace"). In formulating this RFC, the ALJ accorded significant weight to the opinion of Mr. Franks but not controlling weight based on the fact that (1) Mr. Franks is not a physician and (2) Mr. Franks' statement that Claimant would be absent from work more than three times a month contradicted Mr. Franks' numerous findings regarding Claimant's mental impairment, including the finding that Claimant's general appearance, flow of thought, insight, judgment, mood and affect were normal. (R. 18, 307, 309). The ALJ noted further Dr. VanderPlate's finding that Claimant was capable of completing a normal work week. (R. 15). While Claimant contends that the ALJ should have included additional limitations in the hypothetical, including the need to rest, the ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence. Accordingly, Claimant's argument as to this issue is without

merit.

## IV. The ALJ did not fail to identify and resolve conflicts between the VE's testimony and the DOT.

Lastly, Claimant contends the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT as required in Social Security Ruling 00-4p. *See* Pl.'s Mem. at 5. The ALJ's mental RFC finding limited Claimant to jobs requiring only simple, repetitive and routine tasks. (R. 14). Claimant contends this limitation equates to a General Educational Development ("GED")[8] reasoning level of 1, and therefore conflicts with the jobs identified by the VE, which require a reasoning level of 2 or 3.[9] Pl.'s Mem. at 5. Accordingly, Claimant argues the ALJ was required to elicit a reasonable explanation for this conflict before relying on the VE's testimony.

This court has previously addressed the issue of whether a limitation to simple, routine,

---

[8] "[GED] embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." U.S. Dept. of Labor, DOT, App. C § III, Dictionary of Occupational Titles 979.687-034 (LexisNexis), 1991 WL 688702 (Fourth Ed. Rev. 1991). The DOT specifies the GED requirements required for each job, including the level of reasoning skills. Reasoning level one requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Reasoning level two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning level three requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

[9] During the administrative hearing, the VE testified that Claimant could perform the representative jobs of clerical assistant (DOT #239.567-010, reasoning level 2), non-postal mail clerk (DOT #209.687-026, reasoning level 3) and "router, home paperwork dispatch work" (DOT #222.687-038, reasoning level 2). The VE incorrectly assigned the router position the DOT code for "tooth clerk." (R. 48). According to Defendant, the two closest listings in the DOT to the router job identified by the VE are DOT #222.587-038 (identifying the position title as "ROUTER (clerical) alternate titles: dispatcher; marker, delivery; routing clerk") and DOT #222.687-022 (identifying position title as "ROUTING CLERK (clerical) alternate titles: route clerk; router"), both of which require a reasoning level of 2.

23

repetitive tasks is consistent with a DOT reasoning level of two. *See Burnette v. Astrue*, No. 2:08-CV-9-FL, 2009 U.S. Dist. LEXIS 24656, at *17, 2009 WL 863372, at *5 (E.D.N.C. Mar. 24, 2009); *see generally Pepin v. Astrue*, No. 09-464-P-S, 2010 U.S. Dist. LEXIS 98294, at *13, 2010 WL 3361841, at *5 (D. Me. Aug. 24, 2010) (collecting cases holding reasoning level 2 is consistent with an RFC to perform simple, routine tasks). In *Burnette*, the court acknowledged that caselaw is divided as to whether a limitation to simple, routine, repetitive work is consistent with the ability to follow "detailed by uninvolved" instructions as required by DOT's level 2 reasoning requirement. However, citing *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005), court in *Burnette* found that the two-tier scale which disability adjudicators rely on to define an individual's reasoning skills does not "map well onto the DOT's more graduated approach."[10] *Burnette*, 2009 U.S. Dist. LEXIS 24656, at *16, 2009 WL 863372, at *5. Accordingly, the court found that a limitation to simple, routine and repetitive tasks "is not inconsistent with jobs at the DOT reasoning development level 2." *Id.* This court finds the *Burnette* court's reliance on *Meissl* proper; thus, Claimant's argument is without merit. *See Pippen v. Astrue*, No. 1:09-CV-308, 2010 U.S. Dist. LEXIS 102460, at *18-19, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) (finding a reasoning level of two is not inconsistent with a limitation to simple work and observing that "[a]lthough reasoning level two requires the understanding to carry out detailed instructions, 'it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning'") (quoting *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001)).

---

[10] As the *Meissl* court explained, "[t]he Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: 'short and simple instructions' and 'detailed' or 'complex' instructions." *Meissl*, 403 F. Supp. 2d at 984 (citing 20 C.F.R. § 416.969a(c)(1)(iii)). However, the DOT classifies every listed job as requiring a reasoning ability level from one to six. *Id.*

Finally, the court notes that the parties do not dispute that the DOT's reasoning level three is inconsistent with a limitation to simple, routine and repetitive tasks. *Yurek v. Astrue*, No. 5:08-CV-500-FL, 2009 U.S. Dist. LEXIS 78922, at *32, 2009 WL 2848859, at *9 (E.D.N.C. Sept. 2, 2009). Accordingly, the ALJ's reliance on the non-postal mail clerk position was error. The court observes also that the position of router to which the VE was referring is uncertain in light of the VE's failure to identify the proper DOT code associated with that position. Nonetheless, such error is harmless considering the ALJ relied appropriately upon the VE's testimony regarding the representative position of clerical assistant, and that Claimant could perform that position. *See Mickles*, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). As the VE identified a position existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis). Therefore, the testimony of the VE regarding the clerical assistant position constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy which Claimant could perform. *See Prunty v. Barnhart*, No. 6:04-CV-00, 2005 U.S. Dist. LEXIS 16594, at *14-16, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden); *see also* S.S.R. 00-4p, 2000 SSR LEXIS 8, at *6, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the

court finds the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

## V. Claimant's Request for Oral Argument

Claimant submits that oral argument would assist in the court's decision of this case. Pl.'s Mem. at 16. Generally, motions are determined without a hearing. Local Civil Rule 7.1(I). While hearings may be ordered by the court in it its discretion, no deviation from the local rule is warranted in this case. Accordingly, this court recommends Claimant's motion for an oral hearing be DENIED

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's request for oral argument be DENIED, Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 23rd day of March, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge